Octavio Cardona-Loya II (SBN 255309)
Golden & Cardona-Loya, LLP
3130 Bonita Road, Suite 200B
Chula Vista, CA 91910
vito@goldencardona.com
Phone: 619-476-0030; Fax: 775-898-5471
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO J. ALEXANDER,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 23-CV-617-DMS-BLM<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This is an action for damages brought by Plaintiff against Defendants for violations of the California Customer Records Act ("CRA"), Civil Code §1798.80 *et seq*. and California Consumer Privacy Act ("CPA"), Civil Code §1798.100 *et seq.*, both of which require businesses to implement reasonable measures to protect consumers' personal data; for Negligence; and for the financial abuse of an elder.

## II. PARTIES

2. Plaintiff ARMANDO J. ALEXANDER is a natural person.

3. Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") at all times relevant

was a company doing business in San Diego County, California.

4. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and alleges that each Defendant designated as a DOE is involved in or is in some manner responsible as a principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

## III. FACTUAL ALLEGATIONS

5. Plaintiff was a customer of Wells Fargo for around 29 years.

6. On December 15, 2022, Plaintiff visited one of Wells Fargo's Chula Vista, CA branch offices along with his son; it was Plaintiff's son's purpose to close an account belonging to him.

7. Taking advantage of the visit, Plaintiff wanted to deposit funds with Wells Fargo as he carried checking and savings accounts there.

8. Plaintiff was shocked to discover his accounts were practically depleted and the Wells Fargo representative unilaterally closed his accounts and provided him two checks totaling around $200 that did not reflect the money he had deposited there which was closer to approximately $35,000.

9. Plaintiff did not use any online or mobile banking applications through Wells Fargo.

10. Plaintiff informed the Wells Fargo representatives, banker Sylvia Nunez and Manager Jackie Perez, that he did not authorize the activity which depleted his accounts; Plaintiff was told to return in two weeks for them to investigate how his accounts were

depleted without his knowledge or consent.

11. Wells Fargo provided Plaintiff "A customized summary of your visit" document, dated December 15, 2022, and attached hereto as Exhibit 1.

12. The "customized summary" failed to identify any of the aforementioned issues regarding Plaintiff's accounts being virtually depleted by unauthorized parties, and regarding Wells Fargo's instructions for Plaintiff to return in two weeks for Wells Fargo to investigate. The "customized summary" does identify banker Sylvia Nunez and Manager Jackie Perez, but incorrectly states Plaintiff requested his accounts be closed as this was done unilaterally by Wells Fargo. The "customized summary" does not mention any forthcoming investigation on Wells Fargo's part.

13. Plaintiff returned as instructed and spent almost the entire business day at Wells Fargo on or about December 30, 2022, attempting to learn how his bank accounts were depleted without his authorization.

14. After numerous phone calls being made to other departments within Wells Fargo, Plaintiff was informed that an unknown individual accessed his accounts and switched Plaintiff's contact information, such as his email address, and changed his account pin numbers as well; the unauthorized person(s) also obtained new account cards to make purchases without Plaintiff's knowledge, consent, or benefit.

15. The new account cards had different numbers than the account cards Plaintiff had in his possession.

16. The unauthorized person(s) made transfers from Plaintiff's savings account to the checking account in order to deplete Plaintiff's savings which he maintained at Wells Fargo in case of future medical necessities.

17. Despite having closer to $35,000 in his Wells Fargo accounts, Wells Fargo only returned around $5,738 in separate checks included with January 18, 2023, correspondence from its "Claims Assistance Center" to Plaintiff following his dispute, attached hereto as Exhibit 2.

18. In its January 18, 2023, correspondence Wells Fargo stated in conclusory

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

fashion: "We have completed our research and resolved your claim in the amount of [$676.28 and $4,867.33]. Because we were not able to find an open account in your name, we have enclosed a check for [$724.87 and $5,013.19] to reimburse you. The amount of the check includes [$724.87 and $5,013.19] in disputed charges, as well as any fees and applicable interest. Please consider your claim closed." *See* Exhibit 2.

19. The amount refunded by Wells Fargo was arbitrary and did not reimburse Plaintiff for the true amount lost.

20. The correspondence also indicates that Wells Fargo was unable to find an open account in Plaintiff's name and that is why it is reimbursing some money. Wells Fargo did not refund Plaintiff all his money or did so because of the fraud. It merely did so because it apparently could not find his account.

21. Wells Fargo's January 18, 2023, correspondence provided no further information regarding its alleged research or how Plaintiff's personal information was subject to this account breach, or when Wells Fargo discovered or was first notified of said breach.

22. Wells Fargo's January 18, 2023, correspondence also failed to explain why only a smaller portion of the amounts disputed by Plaintiff (around $35,000) were being returned.

23. Wells Fargo failed to properly maintain the personal information of Plaintiff with regards to his accounts, and also failed to secure Plaintiff's sensitive Account information. Wells Fargo further breached its duties to Plaintiff by failing to take reasonable steps to secure Plaintiff's personal and financial information, including failing to ensure that this information was appropriately handled and not misappropriated.

24. Wells Fargo failed to conduct a reasonable investigation into Plaintiff's disputes.

25. Wells Fargo did not refund the amounts improperly withdrawn from Plaintiff's accounts.

26. As a result of Wells Fargo's actions, Plaintiff suffered actual damages including the loss of money and time associated with addressing the foregoing unauthorized

transactions.

27. As a result of Wells Fargo's actions, Plaintiff further suffered emotional distress manifested in the fright and shock experienced when informed his accounts were nearly depleted on December 15, 2022, and subsequent symptoms exhibited included nervousness, worry, anxiety, and humiliation, especially given the lack of transparency on the part of Wells Fargo for failing to provide additional information regarding the unauthorized access of his accounts, and given the exposure of his personal information results in the prospect of unknown persons wrongfully using said personal information in the future without his knowledge or consent.  Plaintiff's worry and anxiety is further exacerbated by the fact that the money depleted was being saved in case of future medical necessities given Plaintiff's elder age.

## IV. FIRST CLAIM FOR RELIEF

### (As Against All Defendants for Violation of the CRA)

28. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

29. Defendants acquired and maintained the "personal information" of Plaintiff as that term is defined by Civ. Code §1798.80(e).

30. Defendants failed to comply with the notice provisions of Civ. Code §1798.82 as Plaintiff was not timely notified of the account breach.

31. On or about December 30, 2022, Wells Fargo informed Plaintiff that an unknown individual accessed his accounts and switched Plaintiff's contact information, such as his email address, and changed his account pin numbers as well; the unauthorized person(s) also obtained new account cards to make purchases without Plaintiff's knowledge, consent, or benefit.

32. Wells Fargo failed to provide and/or withheld any additional information on how Plaintiff's personal information was subject to this account breach, neither verbally in meeting with Plaintiff nor in its correspondence to Plaintiff regarding Wells Fargo's "research" in Exhibit 2.

33.     Wells Fargo also failed to provide and withheld any additional information on when Wells Fargo discovered or was notified of this breach, either verbally in meeting with Plaintiff or in its correspondence to Plaintiff regarding Wells Fargo's "research" in Exhibit 2.

34.     All of Wells Fargo's documentation provided to Plaintiff following his December 15, 2022, visit and dispute have all failed to even mention the breach and have been silent as to the specifics regarding how Plaintiff's personal information was breached by unknown and unauthorized persons. *See* Exhibits 1 and 2.

35.     To date, Wells Fargo has failed to provide Plaintiff with the mandatory written notice required under, and compliant with, Civ. Code §1798.82(d)(1), despite having allegedly "completed [its] research" and "resolved [Plaintiff's] claim". *See* Exhibit 2.

36.     As a result of Defendants' reckless violations, Plaintiff is entitled to actual damages, statutory damages, and attorneys' fees and costs pursuant to Civ. Code § 1798.84.

## V. SECOND CLAIM FOR RELIEF

### (As Against All Defendants for Violation of the CPA)

37.     Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

38.     The CPA, Cal. Civ. Code § 1798.100, *et seq.*, provides consumers with a private right of action against businesses when their personal information is subject to unauthorized access, theft, or disclosure as a result of a business's breach of its duty to take reasonable steps to protect that information.

39.     Plaintiff is a "consumer" as defined in the CPA.

40.     Defendant is a "business" as that term is defined in the CPA and therefore is subject to liability to thereunder.

41.     Defendants stored Plaintiff's personal information as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), including but not limited to Plaintiff's first and last names, account numbers or credit or debit card numbers, in combination with any required security codes, access codes, or passwords that would permit access to an individual's financial accounts.

42. Plaintiff's personal information was collected, stored, and/or transmitted by Defendants in a nonencrypted and nonredacted form, or in some other form that permitted unauthorized individuals to access that information in violation of the CPA.

43. Defendants breached their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff's personal information.

44. As a direct and proximate result of Defendants' failure to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff's personal information, Plaintiff suffered unauthorized access and disclosure of their personal information.

45. As a direct and proximate result of the unauthorized disclosure of personal information, Plaintiff was injured and lost money and privacy interests.

46. Plaintiff seeks actual and statutory damages pursuant to Civ. Code §1798.150.

## VI. THIRD CLAIM FOR RELIEF

### (As Against All Defendants for Negligence)

47. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

48. Defendants owed Plaintiff a duty to protect his funds and personal private information.

49. A special relationship also existed between Plaintiff and Defendants for Plaintiff to recover his economic losses.

    a. The first factor establishing a special relationship is "the extent to which the transaction was intended to affect the plaintiff[.]" *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979). "[T]he first factor is met when plaintiffs share personal data with a company with the understanding that the company will protect that data." *Huynh v. Quora, Inc.*, 508 F.Supp.3d 633, 655 (N.D. Cal. 2020), collecting cases. Here, Plaintiff provided Wells Fargo his sensitive personal information with the understanding that Wells Fargo would protect said data. The transaction was thus unequivocally intended to affect the Plaintiff.

b. The second factor establishing a special relationship is "the foreseeability of harm to the plaintiff[.]" *J'Aire Corp.*, 24 Cal.3d at 804. Courts "determine foreseeability not by reference to specific parties but instead based on the general sort of conduct at issue." *S. Cal. Gas Leak Cases*, 7 Cal.5th 391, 401 n.5 (2019). Here, this factor is met because it was foreseeable that Plaintiff would be subject to unauthorized access if Wells Fargo failed to adequately protect Plaintiff's account information. *See, e.g.*, *Huynh*, 508 F.Supp.3d at 657 (finding it foreseeable that the plaintiff would suffer injury if the defendant failed to adequately protect the plaintiff's personal information); *see also In re Yahoo! Customer Data Sec Breach Litigation*, 313 F.Supp.3d 1113, 1132 (N.D. Cal. 2018) (same); *Terpin v. AT&T Mobility, LLC*, 399 F.Supp.3d 1035, 1120, 1049 (C.D. Cal. 2019) (same).

c. The third factor establishing a special relationship is "the degree of certainty that the plaintiff suffered injury[.]" *J'Aire Corp.*, 24 Cal.3d at 804. Here, Plaintiff was in fact injured by the unauthorized access of his accounts which among other harms alleged herein nearly depleted all of his checking and savings funds resulting in Wells Fargo's closing of his accounts, and Plaintiff's injuries were made possible by Wells Fargo's failure to protect Plaintiff's account information. Plaintiff further lost time and money dealing with the breach as referenced above. This third factor is thus met. *See, e.g.*, *Huynh*, 508 F.Supp.3d at 657 ("finding harm in the form of lost time and money dealing with the data breach"); and *Corona v. Sony Pictures Ent., Inc.*, No. 14-cv-9600-RGK-EX, 2015 WL 3916744, at *3, *5 (C.D. Cal. June 15, 2015) (finding third factor satisfied by "inability to use credit and assets frozen" due to fraud).

d. The fourth factor establishing a special relationship is "the closeness of the connection between the defendant's conduct and the injury suffered[.]" *J'Aire Corp.*, 24 Cal.3d at 804. Here, this fourth factor satisfied by Plaintiff's injury stemming from Wells Fargo's failure to protect personal information. *Huynh*, 508 F.Supp.3d at 657–58.

e. The fifth factor establishing a special relationship is "the moral

blame attached to the defendant's conduct[.]" *J'Aire Corp.*, 24 Cal.3d at 804. Wells Fargo unequivocally had a duty and responsibility to safeguard against this type of breach. Its failure to meet this responsibility, especially with accounts associated with an elder, and additional failure to withhold additional information regarding the breach as referenced above, demonstrates Wells Fargo "became morally blameworthy by the standards set forth in *J'Aire* when it failed to adequately protect" Plaintiff's personal and account information. *Huynh*, 508 F.Supp.3d at 658.

   f. The sixth and final factor establishing a special relationship is "the policy of preventing future harm." *J'Aire Corp.*, 24 Cal.3d at 804. This factor is also met here as imposing liability for Wells Fargo's negligence would encourage similar companies to better safeguard consumers' personal information, and specifically here, such personal and account information pertaining to elders. *Huynh*, 508 F.Supp.3d at 658; *citing In re Sony Gaming*, 996 F.Supp.2d 942, 972 (S.D. Cal. 2014) (finding that "imposing liability might influence other businesses to take the necessary precautions").

50. Defendants breached this duty by permitting unauthorized transactions and by failing to adequately investigate Plaintiff's complaint. In fact, in response to Plaintiff's claim, Wells Fargo merely stated it was unable to find an open account. *See* Exhibit 2.

51. As result of Defendants' conduct as alleged above, Plaintiff suffered harm. Plaintiff seeks damages according to proof.

## VII. FOURTH CLAIM FOR RELIEF

**(As Against All Defendants For Financial Abuse of an Elder)**

52. Plaintiff repeats, realleges, and incorporates by reference all the foregoing paragraphs.

53. Defendants violated the Elder Abuse Act, Welf. and Inst. Code §15610.30 by taking, secreting, appropriating, obtaining, or retaining personal property of an elder, or assisting in those activities for a wrongful use or with intent to defraud, or both.

54. At all times relevant Plaintiff was over the age of sixty-five years.

55. Plaintiff was harmed as a result of Defendants' financial abuse.

56. Based on information and belief, Defendant's malicious and oppressive conduct as described above was authorized and/or ratified by a high-ranking officer, director, or managing agent as Plaintiff disputed unauthorized transactions which were not reversed. *See* Exhibit 2.

57. Liability may also be imposed for assisting in financial elder abuse under an aiding and abetting standard. *Das v. Bank of Am., N.A.*, 186 Cal.App.4th 727, 744-45 (2010). "Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person … gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. [Citations.]" *Id*. at 744, citations omitted.

58. Wells Fargo gave substantial assistance to the unauthorized parties as Wells Fargo's involvement was essential and necessary for the unauthorized parties to access Plaintiff's accounts and switch his contact information, change his account pin numbers, and obtain new physical account cards which Wells Fargo itself provided to the unauthorized parties. Wells Fargo's own conduct, separately considered, constitutes a breach of duty to Plaintiff as referenced above under the CRA, CPA and Negligence claims, rendering Wells Fargo liable to Plaintiff under the established aiding and abetting standard.

59. Despite having allegedly "completed [its] research" and "resolved [Plaintiff's] claim" in returning a portion, but not all, of Plaintiff's depleted funds, Wells Fargo failed to inform Plaintiff of what exactly its research found, and how Wells Fargo allowed the unauthorized access to occur, thus withholding crucial information from Plaintiff that only Wells Fargo could provide. *See* Exhibit 2. Wells Fargo cannot be insulated from liability when it withholds information from Plaintiff regarding his own accounts, thereby depriving him of relevant information regarding his accounts and how they were breached. By withholding this information and subsequently authorizing/ratifying the misconduct, it can be inferred that Wells Fargo "gave substantial assistance or encouragement" to the unauthorized individuals as it has failed to show otherwise in its lack of compliance with the CRA and CPA.

60. Defendants' financial abuse caused Plaintiff harm and are thus responsible for Plaintiff's actual damages, punitive damages, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants, and each of them, for the following:

    (a)   Actual damages;

    (b)   Statutory damages;

    (c)   Treble damages pursuant to Civ. Code §3345;

    (d)   Punitive damages;

    (e)   Costs and reasonable attorneys' fees; and

    (f)   For such other and further relief as the Court may deem just and proper.

Date: August 23, 2023                    /s/ Octavio Cardona-Loya II
                                          Octavio Cardona-Loya II
                                          Attorney for Plaintiff Armando J. Alexander

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

Date: August 23, 2023                    /s/ Octavio Cardona-Loya II
                                            Octavio Cardona-Loya II
                                          Attorney for Plaintiff Armando J. Alexander

# Exhibit 1



**WELLS FARGO**

# ARMANDO J ALEXANDER

## A customized summary of your visit          December 15, 2022

*Convenient access when you need it:*

• Approximately 4,700 retail branches and 12,000 ATMs in 36 states and the District of Columbia
• *Wells Fargo Online®* wellsfargo.com

You can make an appointment to meet with a banker at wellsfargo.com/appointments

You can also talk to a banker at 1-800-869-3557 24 hours a day, 7 days a week

**Thank you for being our customer**

**Additional products and services you selected today that require your follow up**

- **Close Checking/Savings Account -** ▮▮▮▮

  At your request, your account has been closed. If you had any non-Wells Fargo automatic payments, or transfers tied to this account, please contact each individual payee to make new arrangements. You will have 90 days to retrieve historical online documents. If you have any questions, please contact us at 1-800-869-3557.

  **Banker:** SYLVIA A NUNEZ
  **Phone:** ▮▮▮▮▮▮▮▮
  **Banker Email:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  **Manager:** JACKIE PEREZ
  **Phone:** ▮▮▮▮▮▮▮▮
  **Manager Email:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  **Bank Name:** CHULA VISTA
  **Street:** 444 H ST
  **City:** CHULA VISTA
  **State:** CA          **ZIP/Postal Code:** 91910

---

I confirm I received and agree with the information on Customized Summary.

Customer Name
| ARMANDO J ALEXANDER

Customer Signature
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮          ☐ Customer is unable to sign   Date:
                                                          | 12/15/2022

Page 1 of 2
MKT2073 (SVP 8-22)

Exhibit 1
Page 1

# A customized summary of your visit

**Investment and Insurance Products are:**

- Not Insured by the FDIC or Any Federal Government Agency
- Not a Deposit or Other Obligation of, or Guaranteed by, the Bank or Any Bank Affiliate
- Subject to Investment Risks, Including Possible Loss of the Principal Amount Invested

Brokerage products and services are offered through Wells Fargo Advisors. Wells Fargo Advisors is a trade name of Wells Fargo Clearing Services, LLC, Member SIPC, a registered broker-dealer and separate non-bank affiliate of Wells Fargo & Company.

Bankers may refer customers to Wells Fargo Advisors for brokerage services, investment advisory services, and/or insurance products and may be compensated for such referrals.

Wells Fargo Advisors offers insurance products through an affiliated nonbank insurance agency (CA license #26-0070024).

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.
Credit products offered by Wells Fargo Bank, N.A.

© 2022 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801



EQUAL HOUSING LENDER

Page 2 of 2
MKT2073 (SVP 8-22)

Exhibit 1
Page 2

# Exhibit 2

333

**WELLS FARGO BANK, N.A.**
PO Box 5131, N9777-112 OFC
Sioux Falls, SD 57117-5131

000167  CW93F3TA



ARMANDO J ALEXANDER

January 18, 2023

Subject: Check enclosed to resolve claim for your account XXXXXX████
Claim #: ███████9807

Dear ARMANDO J ALEXANDER:

We have completed our research and resolved your claim in the amount of $676.28. Because we were not able to find an open account in your name, we have enclosed a check for $724.87 to reimburse you. The amount of the check includes $724.87 in disputed charges, as well as any fees and applicable interest. Please consider your claim closed.

If you have questions, please call us at 1-800-548-9554, Monday - Friday, 7:00 a.m. to 10:00 p.m., or Saturday, 8:00 a.m. to 8:00 p.m. Eastern Time. We can provide assistance in other languages at this number.

Thank you.
Claims Assistance Center

PLEASE DETACH BEFORE DEPOSITING



**CASHIER'S CHECK**
HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK — 11-24/1210

WELLS FARGO

Check Number: ████████
Date: January 18, 2023

Pay to the order of   ARMANDO J ALEXANDER                                   $724.87

***Seven Hundred Twenty-Four dollars and 87/100***

Drawer: WELLS FARGO BANK, N.A.

For ████████9807
Wells Fargo Bank, N.A.
FOR INQUIRIES: 480-394-3122



Exhibit 2
Page 1

**WELLS FARGO BANK, N.A.**
PO Box 5131, N9777-112 OFC
Sioux Falls, SD 57117-5131

000170   CW93F3TA

ARMANDO J ALEXANDER

January 18, 2023

Subject: Check enclosed to resolve claim for your account XXXXXX
Claim #: 0251

Dear ARMANDO J ALEXANDER:

We have completed our research and resolved your claim in the amount of $4,867.33. Because we were not able to find an open account in your name, we have enclosed a check for $5,013.19 to reimburse you. The amount of the check includes $5,013.19 in disputed charges, as well as any fees and applicable interest. Please consider your claim closed.

If you have questions, please call us at 1-800-548-9554, Monday - Friday, 7:00 a.m. to 10:00 p.m., or Saturday, 8:00 a.m. to 8:00 p.m. Eastern Time. We can provide assistance in other languages at this number.

Thank you.
Claims Assistance Center

PLEASE DETACH BEFORE DEPOSITING

---

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   **CASHIER'S CHECK**   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

11-24/1210

**WELLS FARGO**

Check Number:

Date: January 18, 2023

Pay to the order of   ARMANDO J ALEXANDER                                             $5,013.19

***Five Thousand Thirteen dollars and 19/100***

Drawer: WELLS FARGO BANK, N.A.

For          0251
Wells Fargo Bank, N.A.
FOR INQUIRIES: 480-394-3122



Exhibit 2
Page 2